# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KATHY MEDLOCK, ) <br> ) <br> Petitioner ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | No. 3:16-cv-02603 <br> Judge Trauger |

## MEMORANDUM

### I. Introduction

Pending before the court are the Petitioner's *pro se* Motion To Vacate, Set Aside, Or Correct Sentence (Docket No. 1) and supporting briefs (Docket Nos. 2, 12); and the Government's Responses (Docket No. 8, 24).

For the reasons set forth herein, the Motion To Vacate (Docket No. 1) will be denied, and this action will be dismissed.

### II. Procedural Background

The Petitioner, her husband, and stepson were charged in a 42-count Second Superseding Indictment with conspiracy to commit health care fraud and to make false statements related to health care matters (Count One), substantive counts of health care fraud and making false statements relating to health care matters (Counts Two through Thirty-Seven), wire fraud (Counts Thirty-Eight and Thirty-Nine), and aggravated identity theft (Counts Forty through Forty-Two). (Docket No. 127 in Case No. 3:10cr00004). The charges arose out of reimbursement requests made by Murfreesboro Ambulance Service, a company owned and operated by the

Petitioner and her husband, to the Medicare and Medicaid programs. (Id.)

After a multi-week trial, the Petitioner and her husband were convicted on all charges, and her stepson was acquitted. (Docket Nos. 300, 306, 303, 308, 314 in Case No. 3:10cr00004). At the subsequent sentencing hearing, now-retired Judge Todd J. Campbell sentenced the Petitioner to a total term of 70 months of imprisonment, a below-guideline sentence. (Docket Nos. 359, 360 in Case No. 3:10cr00004).

The Petitioner appealed, and the Sixth Circuit affirmed the Petitioner's conviction on all counts except Counts Forty and Forty-One for aggravated identity theft, which the court reversed. (Docket Nos. 407, 409 in Case No. 3:10cr00004). The Supreme Court subsequently denied the Petitioner's petition for writ of certiorari. (Docket No. 444 in Case No. 3:10cr00004). On remand, the Judge Campbell dismissed Counts Forty and Forty-One, and re-imposed the Petitioner's 70-month sentence on the remaining counts. (Docket Nos. 445, 446, 447 in Case No. 3:10cr00004).

In its decision, the Sixth Circuit presented the relevant facts as follows:

> The Medlocks, who are married, owned and operated Murfreesboro Ambulance Service (MAS), a non-emergency ambulance company that transported Medicare patients to regular kidney-dialysis appointments.
>
> * * *
> I.
>
> MAS transported patients to kidney dialysis. Medicare reimbursed MAS for those transports. United States Department of Health and Human Services (HHS) regulations provide that Medicare will reimburse non-emergency ambulance transport only when such transport is medically necessary for bedridden patients, *i.e.*, when any alternative form of transport, such as taxicabs, is contraindicated. 42 C.F.R. § 410.40 (regulating Medicare payment for certain non-emergency repetitive transports). Medicare policy requires that, in addition to the driver, an Emergency Medical Technician (EMT) accompany any such passenger. The

ambulance company documents each trip with a certification of medical necessity (CMN), signed by a doctor, and a 'run sheet,'[2] which a Medicare contractor other than the ambulance company reviews to determine whether Medicare should reimburse the company for the trip.

Medicare contracts with AdvanceMed Corporation to reduce waste, fraud, and abuse. In or before 2006, AdvanceMed analysis identified MAS as the fifth-highest biller in Tennessee for ambulance transports to dialysis. Accordingly, in December 2006, AdvanceMed audited MAS's billing office. MAS's records were missing some CMNs.

As part of the same investigation, in December 2006, August 2007, and September 2007, Special Agent Christ Covington of HHS, Office of the Inspector General, covertly surveilled a dialysis clinic to which MAS transported patients. Agent Covington videotaped four patients walking, riding in the front seat, being double-loaded in an ambulance (*i.e.*, being driven two patients, rather than one, at a time), being driven by single-staffed ambulances, or being transported by wheelchair (rather than stretcher). MAS had billed the transports as single-passenger and 'stretcher required' (or equivalent).

Investigators also executed a search warrant at the Medlocks' home. They seized an envelope during that search that contained CMNs and run tickets. Some CMNs obtained during the search and by subpoena had been altered. The government later established that some of these CMNs and run tickets had been forged altogether at Kathy Medlock's direction. On July 27, 2011, a grand jury indicted the Medlocks on several counts, including:

> (1) one count of conspiracy to commit health-care fraud and make false statements related to health care matters, in violation of 18 U.S.C. § 371;
>
> (2) eighteen counts of health-care fraud, in violation of 18 U.S.C. § 1347;
>
> (3) eighteen counts of making a false statement in connection with payment for health-care benefits, in violation of 18 U.S.C. § 1035;
>
> (4) two counts of wire fraud, in violation of 18 U.S.C. § 1343; and
>
> (5) two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

The grand jury also indicted Kathy Medlock on an additional count of

aggravated identity theft, in violation of 18 U.S.C. §§ 2 and 1028A(a)(1).

---

[2] The government's expert testified that, '[f]or an ambulance' transport seeking Medicare reimbursement, 'almost all they have documentation-wise' is a run sheet, also called a run ticket or trip ticket, and the Certification of Medical Necessity (CMN). Citing this expert's testimony, the government explained on appeal that

> Medicare requires the provider to keep a copy of the run sheet, that is [,] the document filled out during transport, and it must support the service [provided]. The run sheet must be provided to Medicare upon request. The run sheet must contain certain information, such as name and address of patient, names of attendants on the ambulance[,] and a description documenting the need for ambulance transportation and why the patient could not have gone by other means. For repetitive ambulance transport, a patient would not qualify for Medicare reimbursement if the patient can sit in a wheelchair, ride in the front seat of a vehicle[,] or be able to walk.

Appellee Br. 9 (citations omitted). In addition, '[i]f there was only one EMT transporting a patient by himself,' without another person driving the ambulance, that transport would not 'be reimbursable.'

*United States v. Medlock*, 792 F.3d 700, 703-05 (6th Cir. 2015).

## III. Analysis

### A. 28 U.S.C. § 2255

The Petitioner has brought this action pursuant to 28 U.S.C. § 2255. Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). In order to obtain relief under Section 2255, a petitioner "' must

demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005)(quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)).

If a factual dispute arises in a Section 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray,* 721 F.3d at 761; *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999). A hearing is also unnecessary "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.*

Having reviewed the pleadings, briefs, and records filed in the Petitioner's underlying criminal case, as well as the filings in this case, the court finds it unnecessary to hold an evidentiary hearing because the records conclusively establish that the Petitioner is not entitled to relief on the issues raised.

B. Petitioner's Claims

The claims the Petitioner seeks to raise are not clearly set out in her Motion To Vacate, but the court has identified the following: (1) ineffective assistance of counsel "by attorney (Hershel Koger) for failure to file an appeal on my behalf, resulting in denial of appeal on my behalf (but granted for Co-Defendant (Woody Medlock, Sr.)" (Docket No. 1, at 13); (2) ineffective assistance of counsel for failing to keep the Petitioner informed on appeal (Docket No. 12); (3) ineffective assistance of counsel for advising the Petitioner to reject a plea offer and

5

proceed to trial (Docket No. 12); (4) an apparent challenge to the sufficiency of the evidence (Docket No. 1, at 14-17); (5) a due process claim based on the government's failure to comply with the "Regulatory Fair Warning Act" and the "Administrative Procedures Act;" (Docket No. 1, at 28-37; Docket No. 2, at 1-11); (6) a due process claim based on the failure to obtain a "True Bill" from the grand jury charging the offenses at issue (Id.); (7) a double jeopardy claim based on the duplicitous and multiplicitous nature of the indictment (Id.); and (8) a claim that the Petitioner was deprived of her right to confront witnesses and to be present at all hearings (Id.).

C. <u>Ineffective Assistance of Counsel</u>

In order to prevail on an ineffective assistance of counsel claim, the burden is on the petitioner to show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) actual prejudice resulted from the deficient performance. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011); *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004). The court need not address both requirements if the petitioner makes an insufficient showing on one. *Strickland*, 104 S.Ct. at 2069.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland*, 104 S.Ct. at 2052; *Ludwig v. United States*, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 104 S.Ct. at 2065.

In order to establish prejudice, the petitioner must demonstrate "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*, at 2052. The likelihood of a different result "must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 792, 178 L. Ed. 2d 624 (2011).

In her Motion, the Petitioner claims that Mr. Koger provided ineffective assistance "for failure to file an appeal on my behalf, resulting in denial of appeal on my behalf (but granted for Co-Defendant (Woody Medlock, Sr.)" (Docket No. 1, at 13). In a later filing, the Petitioner also claims that Mr. Koger was ineffective for failing to keep her informed on appeal. (Docket No. 12). A review of the record clearly indicates that Mr. Koger filed an appeal on the Petitioner's behalf and was successful in persuading the appeals court to reverse two counts of aggravated identity theft. The Petitioner's sentence remained unchanged, however, because she, unlike her co-defendants, was charged and convicted in a separate count alleging aggravated identity theft. That conviction carried a mandatory, consecutive statutory sentence of 24 months. 18 U.S.C. § 1028A(a)(1), (b). The Petitioner has not shown that the failure to obtain a reversal of that conviction, or a reduced sentence, was due to any deficiency by Mr. Koger.[1]

---

[1] As the Sixth Circuit explained in an Addendum to its opinion:

> In Counts 40 and 41, the government relied upon the use of identification of patients who were actually transported by ambulance whose transport was unnecessary (and so not eligible for reimbursement). We hold that this use did not constitute aggravated identity theft. But in Count 42, the government relied on Kathy Medlock's forging a physician's signature and thus using his identity to secure reimbursement fraudulently for unnecessary ambulance transports. Our rationale for reversing the convictions on Counts 40 and 41 does not apply to the conviction on Count 42.

As for the Petitioner's complaint that Mr. Koger failed to keep her informed, she has not suggested how the outcome of the appeal would likely have been different had counsel kept her as informed as she would have liked. Under these circumstances, the Petitioner has failed to establish that she received ineffective assistance of counsel in connection with her appeal.

The Petitioner also claims that Mr. Koger should have advised her to accept a plea offer of 37 months of imprisonment, rather than proceed to trial. (Docket No. 12). According to the Petitioner, Mr. Koger told her that he thought they had a very good chance of winning because a local law firm had built a very strong case for them and had invested lots of time in their defense. (Id.) The Petitioner says she now regrets trusting Mr. Koger's advice. (Id.) In response, the Government has filed two affidavits of Mr. Koger in which he denies the Petitioner's allegations. (Docket Nos. 24-1, 24-2). The court finds it unnecessary to consider these affidavits, however, in resolving the Petitioner's claims.

In *Missouri v. Frye,* 566 U.S. 133, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012) and *Lafler v. Cooper,* 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), the Supreme Court held that plea negotiations are a critical stage of criminal proceedings during which a defendant is entitled to the effective assistance of counsel. In *Frye,* the Court explained that trial counsel provides ineffective assistance when he or she fails to communicate and explain a formal plea offer to his or her client in a timely fashion. 132 S.Ct. at 1408.

In *Lafler,* the Court considered the appropriate remedy to be applied where trial counsel

---

For these reasons, we AFFIRM the judgment of the district court on Count 42.

*United States v. Medlock*, 792 F.3d at 712.

conveyed a formal plea offer to his client but erroneously advised the client to reject the offer and proceed to trial because "the prosecution would be unable to establish his intent to murder Mundy because she had been shot below the waist." 132 S.Ct. at 1383. The *Lafler* Court explained that, in order to demonstrate prejudice where trial counsel's erroneous advice leads a defendant to reject a favorable plea offer, the defendant must show that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." 132 S. Ct. at 1385.

The Petitioner has not alleged that counsel failed to convey a plea offer to her, as in *Frye*. Thus, in order to succeed on this claim, the Petitioner must demonstrate that Mr. Koger's alleged statements about the strength of the defense rose to the level of deficient performance. The Supreme Court explained in *Lafler,* however, that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." 132 S.Ct. at 1391.

The Petitioner has not shown that counsel's alleged advice was unreasonable or that counsel precluded her from accepting the plea offer. The Petitioner has not denied that it was her choice to reject the offer and proceed to trial. That counsel's forecast turned out to be wrong does not mean that his advice was unreasonable based on the facts as counsel knew them at the time the alleged advice was given.[2] The Supreme Court has counseled against such a conclusion:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too

---

[2] In that regard, the court notes that one of the co-defendants was acquitted by the jury.

9

> tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Strickland,* 104 S. Ct. at 2065. The Court has pointed out that this deference is especially important in examining the plea negotiation process. *See Premo v. Moore,* 562 U.S. 115, 131 S. Ct. 733, 741, 178 L. Ed. 2d 649 (2011). *See also United States v. Patterson*, 525 Fed.Appx. 681, 685 (10th Cir. 2013)(In the context of plea agreements, bad advice alone is insufficient to prove the deficient performance required for constitutionally ineffective assistance of counsel.) Moreover, given that the Petitioner's filings in this case still maintain that her conduct was more in the nature of business mismanagement than fraud, it is not clear that she actually would have accepted the plea offer, even if Mr. Koger had advised her to do so. For these reasons, the Petitioner has not demonstrated that counsel's alleged advice was deficient, and her ineffective assistance of counsel claim based on that advice is without merit.

D. Other Claims

In a handwritten attachment to her Motion To Vacate, the Petitioner recounts her version of the events underlying her convictions and suggests that her actions did not rise to the level of criminal conduct. (Docket No. 1, at 14-17). In considering her appeal, the Sixth Circuit disagreed, concluding that "the evidence sufficed for a rational trier of fact to find, beyond a reasonable doubt, both Woody and Kathy Medlock guilty of the essential elements of the crimes charged (except for aggravated identity theft, the convictions for which we reversed [Counts Forty and Forty-One]). . . " *United States v. Medlock*, 792 F.3d at 710. The court went on to consider each of the charged offenses in turn:

> To convict the Medlocks of making false statements to Medicare, the government needed to prove that they knowingly made false statements or representations in connection with delivery of or payment for health-care benefits in a matter involving Medicare. The government showed that Woody and Kathy Medlock both did so, for example, by signing or directing employees to sign run tickets that said patients were on stretchers when they were not.
>
> To convict the Medlocks of health-care fraud, the government needed to put on evidence that Woody and Kathy Medlock knowingly devised a scheme or artifice to defraud a health-care benefit program in connection with delivery of or payment for health-care benefits, that they executed the same, and that they did so with an intent to defraud. The government demonstrated that Woody Medlock knew of the scheme and acted in furtherance of it, *e.g.*, by signing Medicare provider forms. And the government showed that Kathy Medlock was in charge of the billing office, and directed employees to further the scheme.
>
> The elements of the health-care-fraud charge satisfy the wire-fraud charge, except for the use of interstate wire communications in furtherance of the scheme to defraud. The government showed that the government paid MAS through wire transfers.
>
> Finally, to prove the conspiracy charge, the government needed to put on evidence of an agreement, tacit or explicit. The government's evidence of actual fraud, as well as of Woody Medlock's and Kathy Medlock's knowledge thereof and benefit therefrom, sufficed to evidence a tacit agreement to defraud Medicare.

*United States v. Medlock*, 792 F.3d at 710-11. The Petitioner has not suggested a legal basis for disregarding the Sixth Circuit's conclusions.

The Petitioner also argues that her due process rights were violated because the agency administering Medicare and Medicaid failed to comply with the "Regulatory Fair Warning Act, H.R. 3307, 1996" and the "Administrative Procedures Act." The Regulatory Fair Warning Act was introduced in the House of Representatives in 1996, but was not passed by Congress. *See* Congress.Gov, H.R. 3307 - Regulatory Fair Warning Act, (https://www.congress.gov/bill/104th-congress/house-bill/3307/all-info) (last visited May 31, 2017). Therefore, the court need not address whether the Act would apply to federal criminal proceedings, as it was not

enacted into law.

As for the Administrative Procedures Act ("APA"), the Petitioner appears to argue that the Department of Health and Human Services failed to comply with the due process requirements of the Act in connection with her prosecution for criminal offenses. The Petitioner's conviction and sentence, however, were not imposed by the agency in question but by the federal courts. The Petitioner has not cited any authority suggesting that the federal courts are bound by the APA in federal criminal proceedings, and the court knows of no such authority. Therefore, her reliance on the APA in seeking to vacate her sentence is misplaced.

The Petitioner also argues that her Fifth Amendment rights to a grand jury indictment were violated because the offenses with which she was charged were not presented to the grand jury and a "True Bill" was not read in open court. The Petitioner offers no support for these allegations. The original Indictment (Docket No. 4), Superseding Indictment (Docket No.118), and Second Superseding Indictment (Docket No. 127) were each signed by a Grand Jury Foreperson under the phrase "A True Bill" and were filed on the docket of the Petitioner's criminal case. A presumption of regularity attaches to a grand jury's proceedings, and the Petitioner has the burden of demonstrating that an abuse has occurred. *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 111 S.Ct. 722, 728, 112 L.Ed.2d 795 (1991); *Franco v. United States*, 187 F.3d 635 (Table), 1999 WL 623354 (6th Cir. Aug. 9, 1999); *Lawson v. United States*, 85 F.3d 629 (Table), 1996 WL 253859 (6th Cir. May 13, 1996). As the Petitioner has presented no factual basis to support this claim, the court concludes that it is without merit.

The Petitioner also argues that the inclusion of 42 charges in the same indictment violates her double jeopardy rights and the rules against duplicity and multiplicity. The Double Jeopardy

Clause of the Fifth Amendment protects against three harms: second prosecution for an offense after initial acquittal; second prosecution for an offense after an initial conviction; and multiple punishments for the same offense. *See, e.g., United States v. Davis,* 306 F.3d 398, 417 (6th Cir. 2002). The rule against "multiplicity," or charging a single offense in more than one count, is to prevent the third harm. *Id.* To determine if multiplicity exists, the court must first determine whether Congress intended to punish each statutory violation separately. *Id.; United States v. Richards,* 659 F.3d 527, 547 (6th Cir. 2011); *United States v. Patel*, ___ F. App'x ___, 2017 WL 2376579, at *2 (6th Cir. June 1, 2017). When congressional intent is unclear, the court applies the "general test" for compliance with the Double Jeopardy Clause, which asks "whether each provision requires proof of a fact which the other does not." *United States v. Swafford,* 512 F.3d 833, 844 (6th Cir. 2008) (*quoting Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

As the Sixth Circuit has explained, the Double Jeopardy Clause does not prohibit use of the same evidence to prove violations of two distinct statutes or multiple convictions of the same statute based on distinct facts. *See, e.g., United States v. Vichitvongsa,* 819 F.3d 260 (6th Cir. 2016).

An indictment is duplicitous if it "'sets forth separate and distinct crimes in one count.'" *United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011) (*quoting United States v. Davis*, 306 F.3d 398, 415 (6th Cir.2002)). The concern with a duplicitous count is that "a 'jury may find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense.'" *Id.* (*quoting United States v. Campbell,* 279 F.3d 392, 398 (6th Cir. 2002).

13

The Petitioner has not suggested which of her 40 counts of conviction implicate the prohibitions against duplicity and multiplicity. A review of the charges provides no support for her claim. Count One charged a conspiracy to commit health care fraud and to make false statements related to health care matters, in violation of 18 U.S.C. § 371. (Docket No. 126 in Case No. 3:10cr00004). The Sixth Circuit has held that a single count of conspiracy to commit more than one crime is not duplicitous, because the conspiracy itself is the crime. *Boyd*, 640 F.3d at 666-67.

Counts Two through Nineteen charged health card fraud, in violation of 18 U.S.C. § 1347, with each count based on a separate request for reimbursement made by the defendants. These reimbursement claims were made on behalf of different beneficiaries on different dates and for different amounts. Thus, these counts do not violate the rule against multiplicity, because each count requires proof of a fact the others do not.

Counts Twenty through Thirty-Seven charged false statements relating to a health care matter, in violation of 18 U.S.C. § 1035, with each count based on a separate reimbursement claim. These claims were also made on behalf of different beneficiaries on different dates and do not violate the rule against multiplicity, because each count requires proof of a fact the others do not.

Counts Thirty-Eight and Thirty-Nine charged wire fraud, in violation of 18 U.S.C. § 1343, with each count based on a separate transfer of funds for payment of reimbursement claims. Thus, these counts do not violate the rule against multiplicity, because each requires proof of a fact the other does not.

Finally, Count Forty-Two charged aggravated identity theft, in violation of 18 U.S.C. §

1028A, based on the forging of a physician's signature on a medical necessity form to secure reimbursement. As with the other counts, the Petitioner has failed to suggest how this charge violates the rule against multiplicity or duplicity. Thus, the court concludes that the Petitioner's double jeopardy claim is without merit.

Finally, the Petitioner claims that she was deprived of her right to confront witnesses and to be present at all hearings, but she does not identify the witnesses she was not allowed to confront or the hearings she was not allowed to attend. The vagueness of this allegation undermines its validity. *See, e.g., McConnell v. United States,* 162 F.3d 1162, 1998 WL 552844 (6th Cir. Aug., 10, 1998)(conclusory, unsupported allegations are legally insufficient to support a motion to vacate).

## IV. Conclusion

For the reasons set forth herein, the court concludes that the Petitioner's request for Section 2255 relief is without merit. Accordingly, the Petitioner's Motion To Vacate will be denied and this action, dismissed.

If the Petitioner gives timely notice of an appeal from the court's ruling, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. § 2253(c), which will not issue, because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. *Castro v. United States,* 310 F.3d 900 (6th Cir. 2002).

It is so **ORDERED.**

ENTER this 11th day of July 2017.

_____
ALETA A. TRAUGER
U.S. District Judge